IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY BLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 09-117-DRH |
| ) | |
| ILLINOIS SECRETARY OF STATE, ) | |
| DEPARTMENT OF POLICE, and MICHAEL ) | |
| PIPPIN, ) | |
| ) | |
| Defendant. ) | |

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Jeffrey Block, by and through his attorney, Richard J. Whitney, and for his Complaint against Defendant Illinois Secretary of State, Department of Police, states:

JURISDICTION

This Complaint is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and Illinois state law. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343 (a)(3) and the aforementioned statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider claims arising under state law.

PARTIES

1. Plaintiff Jeffrey Block is a citizen of the United States and resident of Jackon County, Illinois.

2. Defendant Illinois Secretary of State, Department of Police ("Defendant SOS Police") is an agency of the State of Illinois. Defendant is an "employer" within the meaning of Title I of

the ADA, 42 U.S.C. § 12111(5)(A). Defendant is also a "public agency" within the meaning of § 2611(4)(A)(3) of the FMLA. At all relevant times herein, it was an employer within the meaning of the FMLA, in that it was engaged in an industry affecting commerce and employed fifty or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

3. At all relevant times herein, Defendant Michael Pippin was employed by Defendant SOS Police and had obtained the rank of Captain.

## FACTUAL ALLEGATIONS

4. Plaintiff had been employed by Defendant SOS Police since October 1988 until his termination on July 16, 2007. At all times relevant to this Complaint, he had been employed as an Investigator.

5. On or about June 14, 2004, Plaintiff was diagnosed with Crohn's disease. As a consequence of Crohn's disease, Plaintiff goes through periods in which he needs to use the bathroom frequently, for a period of a couple of hours, until his symptoms subside.

6. In 2005, Plaintiff began experiencing stressful marital and financial problems that aggravated the symptoms of his Crohn's disease.

7. Also in 2005, Plaintiff sought assistance from a Licensed Clinical Psychological Counselor, and was diagnosed with anxiety and depression.

8. As a consequence of these worsening symptoms, on or about January 4, 2006, Plaintiff requested, and was approved for, intermittent Family Medical Leave, for his Crohn's disease, pursuant to the FMLA. Under the terms of his leave, Plaintiff was permitted to use up to 450 hours of FMLA time off, from January 4, 2006 to January 4, 2007, on an as-needed basis,

provided that he meet certain terms of notification.

9. On or about April 5, 2006, Plaintiff was instructed by his supervisor, and lifelong friend, Lieutenant Robert Wingo, to come to his home while off duty, but to use his squad car. Plaintiff did so. While at Lt. Wingo's home, Lt. Wingo informed Plaintiff that a) he had been having a sexual relationship with a subordinate, Investigator Kelly Jo Plemon, b) he feared that Plemon would be filing a sexual harassment lawsuit against him, c) he wanted Plaintiff, and another friend who was present, to assist him in concocting false cover stories to assist him in contesting and defeating any claim of sexual harassment by Plemon, that would entail having Plaintiff and the other friend testify that certain fictitious events and conversations had taken place, and d) he stated that he had previously assisted Plemon in a prior sexual harassment lawsuit against another officer by providing her with information obtained from meetings.

10. Plaintiff did not take any action in support of Lt. Wingo's request to fabricate false cover stories but hoped that Lt. Wingo would reconsider before taking any overt action in support of his scheme.

11. On September 4, 2006, Lt. Wingo contacted Plaintiff and asked him to watch Wingo's children while he participated in a sporting event in Cape Girardeau, Missouri on September 9, 2006. He also stated that he would be taking his children to a motel in Carbondale, Illinois on the night of September 8, 2006, to let them play and swim, during a time when he was supposed to be working a "hireback shift" – an extra shift paid out of a federally funded program. Plaintiff subsequently determined that Lt. Wingo was not working on September 8, 2006 when he was supposed to be working – and that he billed the State of Illinois both for the hireback shift and the motel.

12. On or about September 12, 2006, Plaintiff met with Defendant SOS Police Secretary of State Police Director Brad DeMuzio, Director of Personnel Stephen Roth and senior Inspector General Nathan Maddox and informed them of the events described in paragraphs 9 and 11 herein.

13. On or about September 14, 2006, Plaintiff met with Steve Chiapelli, an inspector with the Defendant SOS Police's Inspector General's office and informed him of the events described in paragraphs 9 and 11 herein. At a subsequent meeting with Chiapelli on September 18, 2006, Plaintiff warned Chiapelli that once Lt. Wingo was informed that he was going to be terminated and/or charged criminally, he (Wingo) would kill himself and possibly his wife and children as well.

14. On or about September 25, 2006, Defendant SOS Police, after interviewing Lt. Wingo about allegations of misconduct that had been made against him, including those provided by Plaintiff, placed Lt. Wingo on suspension pending termination.

15. On September 27, 2006, Lt. Wingo committed suicide. As a consequence of this act, Plaintiff suffered from Panic Disorder, Major Depressive Disorder, Severe, and Post-Traumatic Stress Disorder ("PTSD").

16. On or about September 29, 2006, as a consequence of his friend's suicide, the resulting mental disorders described in the foregoing paragraph, and exhaustion, Plaintiff overslept and failed to report to work on time. When supervisors of Defendant SOS Police could not locate Plaintiff, they put out a dispatch to all law enforcement personnel indicating that Plaintiff was missing and stating that he was a "suicidial police officer."

17. At all times prior to September 27, 2006, despite Plaintiff's Crohn's disease, anxiety

and depression, and the increasing stress that he was under, Plaintiff performed the essential functions of his job, adequately or better, with the reasonable accommodation of being permitted intermittent leave, as described in paragraph 8 herein.

18. After September 27, 2006, Plaintiff could have performed the essential functions of his job had he been given adequate time off and other support needed to recover from the traumatic injury suffered on that date, and the aggravation of his disabilities that this caused.

19. On or about November 15, 2006, Defendant Pippin, who had been assigned to conduct an investigation of Plaintiff, prepared and delivered to Plaintiff a document titled "Notification of Charges/Allegations" that informed him that he was under investigation for various violations of policies and General Orders and was required to submit to an interrogation.

20. On or about November 21, 2006, investigators for Defendant SOS Police interrogated Plaintiff about his job performance, relieved him of his duties and placed him on paid administrative leave, pending the results of an Independent Medical Examination. During the interrogation, Plaintiff informed Defendant SOS Police's investigators that he had been diagnosed with anxiety, depression and PTSD, and reminded them of his Crohn's Disease.

21. On or about February 27, 2007, Plaintiff reported to psychiatrist Terry M. Killian, M.D. for an Independent Medical (Psychiatric) Examination. On or about March 6, 2007, Plaintiff subsequently reported to Licensed Clinical Psychologist Steven Fritz, an associate of Dr. Killian's, for psychological testing.

22. On or about April 3, 2007, Dr. Killian issued a report finding that while Plaintiff suffered from major depressive disorder, and other mental disorders, he was "not impaired sufficiently by that depression to significantly interfere with his work performance."

23. On June 29, 2007, Defendant SOS Police gave Plaintiff a proposed discharge letter, with a list of nine charges and alleged supporting facts, and giving him four working days in which to prepare and submit a rebuttal. Plaintiff submitted a timely rebuttal that again called attention to the stress he had been placed under and his consequential mental disorders.

24. On July 16, 2007, Defendant SOS Police discharged Plaintiff from employment, ostensibly relying, in part, on the report by Dr. Killian.

25. Dr. Killian's report was based, in part, by information, both oral and written, provided to him by Defendant Pippin.

## INCORPORATION OF ALLEGATIONS

26. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

## COUNT I: PLAINTIFF'S CLAIM FOR DISCRIMINATION AND RETALIATORY DISCHARGE UNDER TITLE I OF THE ADA

27. Plaintiff had more than one "disability" within the meaning of Title I of the ADA, 42 U.S.C. § 12102(2), in that his Crohn's Disease, depression, anxiety and PTSD substantially affected his major life activities and Defendant SOS Police regarded Plaintiff as having such an impairment.

28. Plaintiff was a "qualified individual with a disability" within the meaning of Title I of the ADA, 42 U.S.C. § 12111(8), in that he could perform the essential functions of his employment position with reasonable accommodation.

29. Defendant SOS Police's act of labeling Plaintiff "suicidal," its investigation and interrogation of Plaintiff and its termination of Plaintiff's employment violated Title I of the

ADA by discriminating against Plaintiff because of disability, in violation of 42 U.S.C. § 12112.

30. As a consequence of Defendant SOS Police's discriminatory conduct alleged herein, Plaintiff has suffered lost wages and benefits of employment.

31. As a consequence of Defendant SOS Police's discriminatory conduct alleged herein, Plaintiff has suffered humiliation, mental anguish and emotional distress.

32. As a consequence of Defendant SOS Police's discriminatory conduct alleged herein, Plaintiff has incurred attorney's fees and costs of litigation, and will continue to incur such fees and costs.

33. On or about April 4, 2008, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, encompassing the allegations made herein. On or about November 17, 2008, Plaintiff received a Notice of Right to Sue for EEOC charge number 560-2008-01521. A copy of the Notice of Right to Sue is attached hereto as Exhibit A and made a part of this Complaint. Plaintiff has timely filed this action with respect to these allegations.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant SOS Police, and that this Court enter an order providing as follows:

A. That Plaintiff recover from Defendant SOS Police, in an amount to be determined at trial, compensatory damages, including damages for lost wages and benefits, mental anguish and emotional distress;

B. That Plaintiff recover from Defendant SOS Police his attorney's fees and costs of litigation;

C. That Plaintiff be reinstated, or in the alternative, that he be awarded front pay damages;

D. That Defendant SOS Police be enjoined from further illegal discriminatory conduct; and

E. That Plaintiff be granted such other and further relief as it may deem proper.

## COUNT II: PLAINTIFF'S CLAIM FOR UNLAWFUL DISCRIMINATION AND RETALIATORY DISCHARGE UNDER THE FMLA

34. Defendant SOS Police's act of labeling Plaintiff "suicidal," its investigation and interrogation of Plaintiff and its termination of Plaintiff's employment were intentional acts that unlawfully interfered with, restrained and denied Plaintiff's attempt to exercise his rights under the FMLA, within the meaning of § 2615(a) (1) of the FMLA.

35. Defendant SOS Police's termination of Plaintiff's employment was an intentional act that constituted an unlawful discharge of Plaintiff's employment in retaliation for his assertion of his rights under the FMLA, within the meaning of § 2615(a) (2) of the FMLA.

36. As a consequence of Defendant SOS Police's discriminatory conduct alleged herein, Plaintiff has suffered lost wages and benefits of employment.

37. As a consequence of Defendant SOS Police's discriminatory conduct alleged herein, Plaintiff has incurred attorney's fees and costs of litigation, and will continue to incur such fees and costs.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant SOS Police and that this Court enter an order providing as follows:

A. That Plaintiff recover from Defendant SOS Police, in an amount to be determined at trial, for his lost wages and benefits of employment, and prejudgment interest thereupon;

B. That Plaintiff recover from Defendant SOS Police liquidated damages in an amount

equal to the sum of his lost wages and benefits of employment, and prejudgment interest thereupon, as provided under § 2617 (a)(1)(A)(iii) of the FMLA;

C. That Plaintiff recover from Defendant SOS Police his costs of litigation, including reasonable attorneys' fees, as provided under § 2617 (a)(3) of the FMLA;

D. That Plaintiff be reinstated to his position of employment with Defendant SOS Police, or in the alternative, that he recover front pay damages; and

E. That Plaintiff be granted such other and further relief as this Court may deem proper.

## ~~COUNT III: PLAINTIFF'S CLAIM UNDER STATE LAW FOR RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY~~

~~38. On January 29, 2007, Plaintiff submitted a claim for Worker's Compensation benefits pursuant to the Workers' Compensation Act, 820 ILCS § 305/1 et seq., alleging that he had suffered a work-related psychological injury.~~

~~39. Defendant SOS Police terminated Plaintiff in retaliation for his filing a claim for benefits pursuant to the Workers' Compensation Act, 820 ILCS § 305/1 et seq. This constitutes a retaliatory discharge in violation of a clearly mandated public policy under Illinois state law, for which Defendant SOS Police may be held liable.~~

~~40. As a direct and proximate consequence of Defendant SOS Police's actions, as described herein, Plaintiff suffered lost wages and benefits of employment, humiliation, mental pain and anguish and emotional distress.~~

~~WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant SOS Police, and that this Court enter an order providing as follows:~~

~~A. That Plaintiff recover from Defendant SOS Police, in an amount to be determined at~~

~~trial, compensatory damages, including damages for lost wages and benefits, mental anguish and emotional distress;~~

~~B. That Plaintiff recover from Defendant SOS Police his costs of litigation; and~~

~~C. That Plaintiff be granted such other and further relief as this Court may deem proper.~~

<u>COUNT ~~IV~~ III: PLAINTIFF'S CLAIM FOR RETALIATORY DISCHARGE IN VIOLATION OF STATE OF ILLINOIS OFFICIALS AND EMPLOYEES ETHICS ACT</u>

38. There was, in force, at the time of the aforesaid actions, a law of the State of Illinois known as the State Officials and Employees Ethics Act, 5 ILCS 430/1-1 et seq., that provided, in pertinent part:

> § 15-10. Protected activity. An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following:
>
> (1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation. . . .
> 5 ILCS 430/15-10

39. Plaintiff's communications described in paragraphs 12 and 13 herein disclosed to supervisors and a public body (Defendant SOS Police), the activities and practices of a State employee (Lt. Wingo) that Plaintiff reasonably believed were in violation of a law, rule or regulation.

40. Defendant SOS Police's act of labeling Plaintiff "suicidal," its investigation and interrogation of Plaintiff and its termination of Plaintiff's employment were committed in retaliation for Plaintiff's disclosures described in paragraphs 12 and 13 herein.

41. As a direct and proximate consequence of Defendant SOS Police's acts against

Plaintiff, Plaintiff suffered humiliation, mental and emotional distress, as well as lost wages and benefits of employment.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant SOS Police and that this Court enter an order providing as follows:

A. That Plaintiff recover from Defendant SOS Police, in an amount to be determined at trial, compensatory damages, including damages for lost wages and benefits, mental anguish and emotional distress, with interest, as provided by 5 ILCS 430/15-25;

B. That Plaintiff be awarded liquidated damages in an amount two times the amount of lost wages, as provided by 5 ILCS 430/15-25;

C. That Plaintiff be awarded costs of suit incurred;

D. That Plaintiff be awarded reasonable attorney's fees as provided by 5 ILCS 430/15-25; and

E. That Plaintiff be granted such other and further relief as this Court may deem proper.

## COUNT IV: PLAINTIFF'S CLAIM FOR VIOLATION OF STATE OF UNIFORM PEACE OFFICERS' DISCIPLINARY ACT

42. The notification prepared by Defendant Pippin and provided to Plaintiff by Defendant SOS Police on or about November 15, 2006, described in paragraph 19 herein, informing him of a forthcoming interrogation, only apprised Plaintiff of the rules, policies and orders he had allegedly violated, and did not contain any allegations of fact informing Plaintiff of any specific acts or omissions he had committed, or the times, dates or circumstances of any alleged violations.

43. There was, in force, at the time of the aforesaid actions, a law of the State of Illinois

known as the Uniform Peace Officers' Disciplinary Act, 50 ILCS 725/1 et seq., that provided, in pertinent part:

> § 3.2. No officer shall be subjected to interrogation without first being informed in writing of the nature of the investigation. . . . The information shall be sufficient as to reasonably apprise the officer of the nature of the investigation.
> 50 ILCS 725/3.2

44. The notice of a pending interrogation that Defendant SOS Police provided to Plaintiff on November 15, 2006 did not "reasonably apprise the officer of the nature of the investigation."

45. Not only did Defendant SOS Police fail to "reasonably apprise the officer of the nature of the investigation" by its omissions from the November 15, 2006 notice of interrogation; it also actively misled Plaintiff by informing him that the sole basis of the interrogation was alleged poor work performance and intentionally concealed the material fact that the interrogation was in fact triggered by a complaint submitted by Plaintiff's estranged wife (now ex-wife). Defendant SOS Police never revealed this material fact to Plaintiff, either before or after it made the decision to terminate his employment.

46. Section 3.8(b) of the Uniform Peace Officers' Disciplinary Act provides that, "Anyone filing a complaint against a sworn peace officer must have the complaint supported by a sworn affidavit." 50 ILCS 725/3.8(b).

47. The complainant who initiated the complaint against Plaintiff, that being his then-estranged wife, failed to provide a sworn affidavit to Defendant SOS Police before Defendant SOS Police proceeded with its investigation of, and interrogation of, Plaintiff.

48. Section 3.10 of the Uniform Peace Officers' Disciplinary Act provides:

> § 3.10. Admissions or confessions obtained during the course of any interrogation not conducted in accordance with this Act may not be utilized in any subsequent disciplinary proceeding against the officer.

50 ILCS 725/3.10

49. During the interrogation of Plaintiff conducted by officers of Defendant SOS Police on November 21, 2006, Plaintiff made admissions that were utilized in subsequent disciplinary proceedings against him and were specifically cited in the proposed discharge letter that Defendant SOS Police sent to Plaintiff on June 27, 2007 as described in paragraph 23 herein.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant SOS Police, and that this Court enter an order providing as follows:

A. That Defendant SOS Police be enjoined to reinstate Plaintiff, on the ground that its decision to terminate Plaintiff rested on evidence that was obtained in violation of the Uniform Peace Officers' Disciplinary Act;

B. That Plaintiff recover from Defendant SOS Police, in an amount to be determined at trial, for his lost wages and benefits of employment, and prejudgment interest thereupon;

C. That Plaintiff recover from Defendant SOS Police his costs of litigation; and

D. That Plaintiff be granted such other and further relief as this Court may deem proper.

## COUNT VI: PLAINTIFF'S CLAIM AGAINST DEFENDANT PIPPIN FOR TORTIOUS INTERFERENCE WITH EMPLOYMENT CONTRACT AND/OR BUSINESS RELATIONSHIP UNDER ILLINOIS STATE LAW

50. At the time when Defendant Pippin conducted his investigation of Plaintiff, he was aware that Plaintiff had an ongoing and active employer-employee relationship with Defendant SOS Police.

51. Defendant Pippin intentionally induced a breach of Plaintiff's employer-employee relationship with Defendant SOS Police by committing the following acts and omissions:

13

   a. <u>Deliberately</u> omitting all factual allegations from the November 15, 2006 notification described in paragraph ~~17~~ 19 herein;

   b. <u>Deliberately</u> concealing from Plaintiff the true and full nature of the complaint against him that initiated the investigation against him, and the identity of the complainant, even during the actual interrogation of Nov. 21, 2006;

   c. Making false statements and/or providing misleading and unsubstantiated information to Dr. Killian for purposes of his so-called "Independent Medical (Psychiatric) Examination," described in paragraphs 21 and 22 herein, in order to cast Plaintiff in the worst possible light, including, but not limited to, false statements that Lt. Wingo "had not broken any laws," that Plaintiff had exaggerated the seriousness of his own allegations against Lt. Wingo, and that there was good cause to believe that Plaintiff had been abusing drugs and/or alcohol. These false statements and information tainted Dr. Killian's examination and <u>were included in and</u> contributed to the findings and conclusions reached by Dr. Killian, described in paragraph 22 herein, that cast Plaintiff in a negative light and formed part of the ~~ostensible~~ justification ~~and pretext~~ for his termination.

52. The acts and omissions described in the foregoing paragraph caused, in whole or in part, Defendant SOS Police's decision to terminate Plaintiff's employment.

53. As a direct and proximate consequence of Defendant Pippin's <u>intentional</u> acts and omissions against Plaintiff, and the resulting termination of Plaintiff's employment, Plaintiff suffered humiliation, mental and emotional distress, as well as lost wages and benefits of employment.

54. Defendant Pippin's acts and omissions against Plaintiff, as described in paragraph 51

14

herein, were committed with fraudulent intentions, actual malice, deliberate oppression, willfully, and/or with such gross negligence as to indicate a wanton disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Michael Pippin, and that this Court enter an order providing as follows:

A. That Plaintiff recover from Defendant Pippin, in an amount to be determined at trial, compensatory damages, including damages for lost wages and benefits, mental anguish and emotional distress, with interest;

B. That Plaintiff be awarded exemplary or punitive damages, as provided by law;

C. That Plaintiff be awarded costs of suit incurred; and

D. That Plaintiff be granted such other and further relief as this Court may deem proper.

Plaintiff further demands trial by jury.

>                               RESPECTFULLY SUBMITTED,
>                               PLAINTIFF JEFFREY BLOCK

Dated: May 26, 2009                    By: s/ Richard J. Whitney
                                       Richard J. Whitney
                                       Attorney for Plaintiff

Richard J. Whitney
ARDC# 06238355
Speir & Whitney
Milwood Executive Suites
3200 Fishback Rd.
Carbondale, IL 62901
Telephone: (618)549-5159

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY BLOCK, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No. 09-117-DRH |
| | ) |
| ILLINOIS SECRETARY OF STATE, | ) |
| DEPARTMENT OF POLICE, and MICHAEL | ) |
| PIPPIN, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

     I hereby certify that on July 16, 2009, I electronically filed the foregoing First Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Terence J. Corrigan
Assistant Attorney General
500 South Second Street
Springfield, IL 62706

                  Respectfully submitted,

                  s/ Richard J. Whitney
                  Richard J. Whitney
                  Speir & Whitney
                  3200 Fishback Rd.
                  Carbondale, IL 62901
                  Telephone: (618)549-5159
                  Fax: (618) 351-1419
                  E-mail: richwhitney@verizon.net