IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEFFREY BLOCK,

Plaintiff,

v.

ILLINOIS SECRETARY OF STATE,
DEPARTMENT OF POLICE, and
MICHAEL PIPPIN,

Defendants.                                                    No. 09-117-DRH

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

## I. Introduction

Before the Court is Defendant Illinois Secretary of State Department of Police's Motion for Summary Judgment (Doc. 40). Defendant argues that it should be granted summary judgment because Plaintiff can not prove discrimination under the ADA or retaliation for exercising his FMLA rights. Specifically, Defendant argues that Plaintiff does not qualify as an individual with a disability under the ADA, nor can he meet the direct or indirect method of proving a violation of his rights under the ADA or the FMLA. Plaintiff has filed a Response (Doc. 44). Plaintiff has also requested that the Court strike Defendant's memorandum of law in support of motion for summary judgment (Doc. 41) because it lacks proper citation to the facts

as required under **LOCAL RULE 7.1(d)**. Plaintiff further argues that he has met his burden and has presented both direct and indirect evidence of discrimination under the ADA and FMLA. Defendant has filed a Reply (Doc. 47) addressing the motion to strike and issues raised in Plaintiff's Response. Based on the following, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 40).

## II.  Factual Background

This action stems from Plaintiff's dismissal from his position as a police officer under the Secretary of State Police. Plaintiff first experienced problems with his work in 2002 or 2003 when Sergeant Hoffman initiated complaint's about Plaintiff's job performance (Doc. 41 Ex. 4 at pp. 59, 61-62). Sometime later in June of 2004, Plaintiff was diagnosed with Crohn's disease, a disease which includes symptoms of abdominal pain, diarrhea, nausea, vomiting fatigue, and joint pain which occur on an intermittent rather than daily basis (*Id*. at pp. 20-22; Ex. 8 at p. 15). After advising Hoffman of his diagnosis, Sergeant Hoffman suggested that plaintiff apply for leave under the Family Medical Leave Act (FMLA). Plaintiff, in turn, applied for FMLA on January 4, 2006 and was approved on January 9, 2006 (*Id*. at p. 29; Ex. 8 at p. 18).

In January 2006, the Department of Secretary of State Police placed Plaintiff on a leave of absence until he underwent a fitness for duty examination (***Id.*** at pp. 32-33; Ex. 8 at p. 19). The leave expired on March 15, 2006. Around the same time, Plaintiff's supervisors believed Plaintiff was displaying poor work performance

by failing to do his work, submit work in a timely fashion, and failure to update information for his work assignment (Doc. 41 Ex. 8 at pp. 21-23, 31, 67, & Ex. 10). Thus, Sergeant Hoffman was ordered to keep a weekly account of Plaintiff's time records (*Id*. at pp. 22-23). On an occasion in July 2006, Plaintiff failed to notify his direct supervisor that he was sick and thus was taking time off, and Sergeant Hoffman counseled Plaintiff as to this matter (*Id*. at p. 67). Plaintiff maintains that Sergeant Hoffman harassed him because of his use of benefit time and treated him differently because of his illness (*Id*. at pp. 67-68). Plaintiff continued to experience problems at work, failing to return telephone calls on a case he was working on and sometime in early September 2006; Sergeant Hoffman had to instruct Plaintiff to complete the reports as to that case or face written discipline (*Id*. at p. 31 & Ex. 20).

On September 16, 2006, Plaintiff complained to the Inspector General of the Secretary of State that one of his supervisors, Lieutenant Wingo, had asked him to engage in misconduct (Doc. 41 Ex. 10 at p. 19). Plaintiff also met with Steve Roth, Director of Personnel, Inspector General Nathan Maddox, Director of the Department of the Secretary of State Police Brad Demozio, along with Plaintiff's counsel, on September 16, 2006 to discuss the allegations against Wingo (*Id*.). Wingo, subsequently, committed suicide on September 27, 2010 (Doc. 41 Ex. 8 at pp. 39-40).

Due to Plaintiff's close relationship with Wingo, Director Demuzio authorized another officer to be with Plaintiff in order to support him, and the

Secretary of State Police provided officers with the opportunity to attend stress debriefing presented by Chaplain Lovin (Doc. 41 Ex. 7 at pp. 37-38, 43). Plaintiff alleges that in the months after Wingo's death, he continued to feel building stress at work and he was devastated and depressed by Wingo's death (Doc. 41 Ex. 5 at p. 85). On September 26, 2006, Captain Brad Warren was advised by Chaplain Lovin that Plaintiff was stressed over the death of Wingo and that Plaintiff had gone missing and Lovin was very concerned about Plaintiff's state and felt that the Secretary of State Police needed to locate Plaintiff. In response, Director Demuzio authorized an officer to contact the Illinois State Police to air a dispatch on September 29, 2006 in order to locate Plaintiff (Doc. 41 Ex. 11 at pp. 28-29). Director Demuzio believed, based on the information given to him, that Plaintiff had not reported for work, could not be reached by telephone after numerous attempts to contact him, and that his employer was concerned about him given his close relationship to Wingo (Doc. 41 Ex. 7 at 52-53; Ex. 6 at Ex. 8). Deputy Director Steven Rutledge contacted the Illinois State Police about the situation with Plaintiff but did not inform them that he was suicidal (Doc 41 Ex. 6 at Ex. 8; Ex. 7 at pp. 52-56). The Illinois State Police, in turn, issued a dispatch stating that there were indications that Plaintiff was suicidal. Deputy Director Rutledge complained to the Illinois State Police about the use of the term "suicidal" to describe Plaintiff (*Id.*).

On October 25, 2006, Captain Michael Pippin, who was in charge of supervising internal investigations with the Secretary of State Police, began to investigate allegations by Sandy Block, Plaintiff's estranged wife, who had reported

that Plaintiff was driving out of his assigned area and harassing her at home (Doc. 41 Ex. 9 at pp. 26-27). On November 1, 2006, Lieutenant Willenborg sent a memo to Captain Warren, who was not involved in the investigation of Plaintiff, stating that, based on her review of Plaintiff's attendance records, Plaintiff's performance was unsatisfactory and she recommended he be disciplined (Doc. 41 Ex. 12 at pp. 13, 15, & Ex. 32). Plaintiff alleges that Lieutenant Willenborg harassed him due to her critical reviews (Doc. 41 Ex. 4 at pp. 67-68). Plaintiff met with Willenborg and Hoffman to discuss his timekeeping (Doc. 41 Ex. 12 at p. 19). Although Willenborg recommended discipline, Warren instead chose to institute a performance improvement plan to help Plaintiff meet his job's expectations (Doc. 41 Ex. 11 at pp. 34-35).

On November 14, 2006, as part of the Illinois Secretary of State Police investigation, Plaintiff was placed on paid administrative leave until a fitness for duty examination could be performed. Plaintiff had informed investigators that he did not believe he was fit for duty. On February 27, 2007, Dr. Terry Killian reviewed Plaintiff who claimed he was recovering from Wingo's death (Doc. 41 Ex. 4 at p. 73). Dr. Killian found that Plaintiff was fit for duty (*Id.*). Steve Roth, Director of Personnel for the Office of the Secretary of State Police, relied, in part, on those findings when making his independent decision about the allegations against Plaintiff (Doc. 41 Ex. 10 at pp. 34, 14-15). On July 2, 2007 Steve Roth independently found that Plaintiff should be terminated for his misconduct (*Id*. at p. 12).

### III. Summary Judgment Standard

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(a)** summary judgment should be awarded "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED.R.CIV.P. 56(a)**; *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)**. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." A party can establish that a fact is in dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." **FED.R.CIV.P. 56(c)**. A party can also prove that the cited materials do not establish a genuine dispute, "or that an adverse party cannot procedure admissible evidence to support the fact." *Id*.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. ***See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003)**. At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).**

### IV.  Analysis

**A.     Motion to Strike**

The Court first addresses Plaintiff's Motion to Strike which was raised in his Response to the Motion for Summary Judgment (*See* Doc. 44).  Plaintiff argues that Defendant's memorandum in support of its motion for summary judgment should be stricken because it failed to meet the requirements of **LOCAL RULE 7.1(d)**. **SDIL LOCAL RULE 7.1(d)** provides that: "All briefs shall contain a short, concise statement of the party's position, together with citations to relevant legal authority and to the record."  Plaintiff argues that Defendant failed to abide by **LOCAL RULE 7.1(d)** in submitting its memorandum as its factual allegations do not contain any references to the record.

In response, Defendant argues that it has provided citations in its separate statement of material facts.  The Court agrees with Defendant.  The Court does not find that Defendant violated any of the Court's local rules or other federal rule of civil procedure by providing citations only in its separate statement of facts and not in the memorandum itself.  Clearly, Defendant has provided the proper citations as its statement of facts include proper citation.  Further, under the terms of **Rule 7.1(d)**, whether to consider the facts not supported by citation is within this Court's discretion according to the rule.  The Court notes that Defendant's memorandum and its factual statement in the memorandum is clear and does not require scouring the record to locate the source of the statements.  Therefore, the

Court finds that the memorandum (Doc. 41) does not warrant striking. Accordingly, the Court **DENIES** Plaintiff's motion to strike (Doc. 44).

**B.      Discrimination under the ADA and FMLA**

Plaintiff brings his Complaint under both the **Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq*. ("ADA")** and the **Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA")**. Plaintiff brings claims of discrimination under the ADA and retaliation under the FMLA. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." **42 U.S.C. § 1211(a)**. The test for determining whether discrimination has occurred is a "but for" test. ***Serwatka v. Rockwell, Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010)**. Further, under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." **29 U.S.C. § 2615(a)(2)**. Under either statute, a plaintiff may prove his claims either under the direct or indirect approach.

     **1.      Discrimination under the ADA**

          **a.      Qualified Individual**

Defendant first argues that Plaintiff's claims under the ADA fail because

he is not a "qualified individual" as defined by the ADA.[1] If Plaintiff is not a qualified individual under the ADA, then his claims would fail regardless of whether he tries to prove his claims under the direct or indirect approach.

In order to qualify as disabled under the ADA, a plaintiff must have a "physical or mental impairment that substantially limits someone in one or more 'major life activities' as well as the status of 'being regarded as having such an impairment.'" ***See Ogborn v. United Food and Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002) (citing 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002)); *Gratzel v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678-79 (7th Cir. 2010); *Maclin v. SBC Ameritech*, 520 F.3d 781, 786-87 (7th Cir. 2008)**. Not every medical condition in and of itself constitutes a disability under the ADA. ***Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 642-43 (7th Cir. 2005)**. Rather, in order to constitute a disability under the ADA, a plaintiff must show that "(1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such an impairment; or (3) his employer regards him as having such an impairment." ***Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516, 521 (7th Cir. 2009)**.

---

[1] Defendant originally argued that the Department of Police of the Secretary of State was not an entity capable of being sued but has since withdrawn the argument.

Here, Plaintiff alleges that he has mental impairments including depression, anxiety, panic disorder, and post-traumatic stress disorder (Doc. 41 Ex A at pp. 29-30). Depression can constitute a disability, but it must be more than intermittent, episodic, or isolated boats of depression and must instead be major depression. ***Ogborn*, 305 F.3d at 767 (*see Vande Zande v. Wis Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995); *Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16 (1st Cir. 1997))**. Plaintiff also alleges that he suffers from Crohn's Disease which effects the elimination of bodily waste. The Seventh Circuit, in a recent opinion, has stated that it has never held that the elimination of bodily waste is a major life activity under the ADA, although other Circuits have. ***Gratzel*, 601 F.3d at  679 (the Seventh Circuit declined to decide on whether the elimination of waste, in this case an individual suffering from incontinence, qualified under the ADA as the plaintiff's case failed in other respects)**. Here, Plaintiff has failed to show that his illnesses interfered with a major life activity.

As to whether his conditions interfere with a major life activity, Plaintiff argues that both his Crohn's disease and his mental impairments interfered with his major life activities. As to his Crohn's disease, Plaintiff argues that unlike in ***Gratzel*** he is not relying solely on frequent bathroom breaks but that his condition interferes with concerts, fairs, parades, sporting events, golf, and other outdoor activities like outdoor exercise and hiking because he requires frequent breaks. In particular, Plaintiff argues that his condition affects his walking because he can only engage in

walking for a limited duration. However, to qualify as a disability, "a limitation on the ability to walk must be 'permanent or long term, and considerable compared to the walking most people do in their daily lives.'" **Fredrickson, 581 F.3d at 522 (citing cases in which a severe limitation on walking coupled with a doctor's recommendation to avoid excessive walking constituted a disability under the ADA while testimony that a plaintiff had difficulty walking without medical or other evidence of time or distance limitations was not sufficient (citations omitted))**.

Here, Plaintiff has not backed up his claim that his walking is impaired substantially. Plaintiff merely states that he must take frequent breaks when walking, more than normal people. Yet, he fails to back up his claims with medical or other corroborating evidence. Further, he fails to provide evidence for his claim that his Crohn's disease interferes with his life activities. Although he lists numerous events and activities that he alleges are disrupted due to his illness, he provides no evidence to support his assertions. "Vague assertions of difficulty performing a major life activity do not create a genuine issue of material fact, particularly when unaccompanied by any evidence that the limitation is substantial compared to that of other adults." **Fredricksen, 581 F.3d at 522-23.** Here, Plaintiff has failed to provide any other evidence other than vague assertions as to the activities that are affected by his Crohn's disease. He has not provided any medical evidence, nor has he provided corroborating evidence as to how severe his condition is or the specific

Page 11 of 20

effects on his job. Accordingly, his Crohn's disease would not entitle him as a "qualified individual" under the Act.

As to his depression and other mental impairments, Plaintiff argues that basic activities such as sex, sleeping, and social interaction is affected by his mental issues and his ability to engage in physical and mental activity was limited. Further, Plaintiff argues that he has not been able to obtain proper sleep for months. While loss of sleep can be a major life activity, the Seventh Circuit has stated that the loss must be "prolonged, severe and long-term" in order to qualify under the ADA. ***Squibb v. Memorial Medical Center*, 497 F.3d 775, 784 (7th Cir. 2007)**. This lack of sleep must create a decreased functional level during a plaintiff's daytime activities. ***Id***. General assertions that an individual has been unable to sleep for a certain period of time without medical evidence or other supporting evidence that the loss of sleep affects an individual's daytime activities is not enough to survive summary judgment. ***Id.* (citing cases where claims of decreased sleep of two to five hours a night without more supporting evidence was not enough to establish a disability under the ADA while five to six hours of sleep a night which effected an individuals ability to function during the daytime was considered a disability)**.

Here, once again, Plaintiff fails to provide the necessary evidence to survive the summary judgment stage. He has provided the Court with no more than vague assertions from his own previous testimony that his mental impairments had

an effect on his sex life, sleeping, and social interactions. While he testified that he has been unable to obtain "proper sleep" for months, he fails to provide evidence on how much sleep he gets a night, how that lack of sleep affects his daily life, or even medical evidence supporting his claims. As to his other claimed affects on his various activities, Plaintiff fails to provide more than vague assertions and his own testimony. Therefore, the Court also finds that these claimed affects on his social and night life are not enough to constitute an interference with a major life activity under the ADA.

Plaintiff, however, argues that he is a qualified individual under the Act because Defendant regarded Plaintiff as having an impairment, under the third prong of the test. Plaintiff argues that Defendant regarded him as having an impairment as they tried to accommodate his impairment by approving his requested FMLA leave. However, an employer my grant FMLA leave for instances other than a disability, **see 29 U.S.C. § 2612**, and Plaintiff has failed to provide any evidence that the Department and relevant decision makers had "exaggerated views about the seriousness of his illness." **Ogborn, 305 F.3d at 768**. Therefore, Plaintiff's claimed disability also fails under this test. Accordingly, Plaintiff's claims under the ADA must fail.

    **b.**    **Direct Approach**

Even if Plaintiff's conditions qualified him under the ADA, Plaintiff cannot prove his claims for discrimination under the ADA. To prove his claims,

Plaintiff may rely on either the direct or indirect approach. Under the direct approach, a plaintiff may show through direct or circumstantial evidence that the protected action was the motivating factor in the employer's decision. ***See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)**. Under the ADA, a plaintiff must show that he suffers from a disability, he is qualified to perform the essential functions of the job, and that he suffered an adverse employment action as a result of his disability. ***Dargis v. Sheahan*, 526 F.3d 981 (7th Cir. 2008)**.

Under the direct approach, Plaintiff argues that his theory of liability is not a "cat's paw" theory as suggested by Defendant, but rather is based on the theory that Hoffman and others "so thoroughly poisoned the well against him with false or contrive allegations, that it must have caused strong bias against him in the minds of Roth and Director Demuzio." Plaintiff claims that the information that Roth relied on while conducting his investigation of Plaintiff was so tainted that if "reflected an institutional bias against Plaintiff." However, he offers no legal support to back up his claim, nor does he offer any evidence that Roth or Demuzio were biased. Plaintiff, under the direct method, must show through direct or circumstantial evidence that the "[*decisionmaker's*] actions were based upon the prohibited animus." ***Buie*, 366 F.3d at 503 (direct approach "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus" or evidence that "allows a jury to infer intentional discrimination by the decision-maker")**. Plaintiff has produced no evidence showing that Roth's decision was based upon a

prohibited animus.

As to the claims that Defendant wrongfully dispatched that Plaintiff was suicidal, Plaintiff has not refuted Defendant's arguments in its motion. Plaintiff does not dispute that the Department was not responsible for the statements by the State Police and that it was the State Police's decision to include in its dispatch that Plaintiff might be suicidal. Thus, the Court finds that Plaintiff's claim that Defendant wrongfully had a dispatch issued which stated that Plaintiff was suicidal fails as he has not put forth any evidence that Defendant was responsible for the specific terms of the dispatch.

### c. Indirect Approach

Defendant also argues that Plaintiff fails to meet his burden under the indirect approach. Under the ADA, using the indirect approach, a plaintiff must first establish his *prima facia* case by demonstrating that "(1) he is disabled under the ADA, (2) he was meeting his employer's legitimate employment expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably." **Lloyd v. Swifty, Transp., Inc., 552 F.3d 594, 601 (7th Cir. 2009) (citing Mobley v. Allstate Ins. Co., 531 F.3d 539, 548 (7th Cir. 2008); Rooney v. Koch Air, LLC, 410 F.3d 376, 380-81 (7th Cir. 2005)); Squibb v. Mem'l Med. Gr., 497 F.3d 775, 788 (7th Cir. 2007)**. If plaintiff is able to meet his *prima facia* case, the burden then shifts to the defendant to show a legitimate, nondiscriminatory reason behind the adverse action. ***Id***. Plaintiff must

then show that the reason given by defendant was merely pretextual. *Id*.

Here, Plaintiff can not show that a similarly situated employee who was not disabled was treated differently. In his Response, Plaintiff argues that an Investigator Norm Thompson was treated more favorably than he was and yet he was subject to the same complaints as Plaintiff. Plaintiff argues that Investigator Thompson was the subject of a harassment and improper use of a state vehicle complaint but yet he was not investigated nor disciplined in any manner. However, Plaintiff has not demonstrated that Investigator Thompson was similarly situated. Although he did have the same job as Plaintiff, he did not commit the same acts as Plaintiff. While Investigator Thompson was within his assigned area, Plaintiff was the subject of an investigation which revealed that he did virtually no police work, lied about his whereabouts, and broke numerous traffic laws. During the investigation of Plaintiff, a GPS unit attached to his vehicle revealed that he spent most of his work hours at his home, his girlfriend's home, or his ex-wife's home. While Investigator Thompson might have had some of the similar complaints against him, Plaintiff has not shown that he was similarly situated in all aspects.

Furthermore, as previously pointed out, Plaintiff can not meet his burden of demonstrating that he was meeting his employment expectations or that he suffered an adverse employment action. The investigation into Plaintiff clearly shows that he was not meeting his employer's expectations. Further, Plaintiff had already been put under a job improvement plan because of his attendance issues, poor work performance, and failure to timely complete reports and other work.

Plaintiff has not offered any proof that he was meeting his employer's legitimate expectations. Even still, given his poor work performance record, Defendant had a legitimate reason for terminating Plaintiff which Plaintiff has failed to rebut. Plaintiff, therefore, fails to meet his *prima facie* case under the indirect method as well.

### 2. Retaliation under the FMLA

As to Plaintiff's claim of retaliation under the FMLA, the statute prohibits "discriminat[ion] against any individual for opposing any practice made unlawful by [the] subchapter." **29 U.S.C. § 2615(a)(2)**. As with the ADA, plaintiffs proceedings under a retaliation claim under the FMLA may prove their claim either by the direct or indirect approach. ***Long v. Teachers Retirement System of Illinois*, 585 F.3d 344, 349 (2009) (quoting *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741-42 (7th Cir. 2008))**.

#### a. Direct Method

An FMLA retaliation claim proceeding under the direct method is the same as any other retaliation claim under the ADA or Title VII and is tested in the same manner as an ADA claim, as previously described. ***Buie*, 366 F.3d at 503.** Under the FMLA, a plaintiff must show that he was engaged in a statutorily protected activity, a materially adverse employment action taken by the employer occurred against plaintiff, and plaintiff can show a causal connection between the two. ***Long*, 585 F.3d at 349-50 (*Caskey v. Colgate-Palmolive* Co., 535 F.3d 585, 593 (7th Cir. 2008))**.

Once again, Plaintiff relies on the theory that others in the Department so "poisoned the well against him with false" allegations that it caused a bias against him in the eyes of the ultimate decision makers. However, like with his ADA claims, Plaintiff fails to point to any legal authority behind his theory nor does he support his allegations.

Although Plaintiff claims he is not participating under a "cat's paw theory," he has not even met his burden of demonstrating such a claim. Under a cat's paw theory, actions of the subordinate can be imputed to the decision-maker where the "subordinate exerts significant influence over the employment decision." **Long, 585 F.3d at 351.** Liability attaches when the decision-maker "rubberstamps" the subordinate's recommendations. ***Id.* (citing *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003))**. However, an independent review and investigation "weighs heavily against a finding of excessive influence." ***Id.* (citing *Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009)**. Here, Plaintiff has not shown that Roth was heavily influenced by any of the individuals Plaintiff claims harassed him because of his disability. While Hoffman, Willenborg, and Warren questioned his use of benefit time, none of those individuals investigated Plaintiff and played a part in the decision to terminate Plaintiff's employment. The investigation of Plaintiff occurred by the Springfield officials and not by any of the individuals with an alleged bias. Plaintiff even admits in his Response that Roth considered numerous pieces of evidence in making his decision to terminate Plaintiff. Roth reviewed the

investigation by the Department of Police and the Inspector General, the medical exam performed by Dr. Terry Killian, Plaintiff's personnel file, and the input of Brad DeMuzio. It is clear from Plaintiff's own arguments that Roth did not merely "rubberstamp" any subordinates' findings but conducted an independent inquiry before making his decision. Nor has Plaintiff offered any evidence to the contrary. Instead, the record clearly shows that Director Roth conducted his own, independent review of Plaintiff's file and the investigation conducted by the Department and came to the independent decision to terminate Plaintiff. Further, the investigation was conducted in response to claims of misuse of his department vehicle and misuse of work time. Thus, Plaintiff's claim for retaliation fails under the direct approach.

### b.  Indirect Method

Plaintiff's claim also fails under the indirect method. Similar to the ADA, under the FMLA, a plaintiff must prove that he was treated differently from other similarly situated employees who did not request leave under the FMLA even though he was performing satisfactorily. ***Smith v. Hope School*, 560 F.3d 694, 702 (7th Cir. 2009)**.

For the same reasons as discussed in regards to the ADA claims, Plaintiff's retaliation claim under the FMLA also fails under the indirect method. Plaintiff has failed to establish a similarly situated employee who did not request leave under the FMLA. The investigator that Plaintiff points to in his Response was not similarly situated in all aspects. Further, Plaintiff was clearly not meeting his

employment expectations given the various work related performance issues that arose during the course of his employment. Given Plaintiff's work deficiencies, Defendant had a legitimate reason, which Plaintiff fails to rebut, for terminating Plaintiff's employment. Thus, summary judgment is appropriate for Plaintiff's claims under the FMLA as well.

## V. Conclusion

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 40). As all of the pending claims against the remaining Defendant have now been resolved, the Court **DIRECTS** the Clerk of the Court to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 14th day of December, 2010.

David R. Herndon
2010.12.14
23:10:13 -06'00'

**Chief Judge
United States District Court**